Andrew M. Spurchise, Bar No. 245998
aspurchise@littler.com
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022.3298
Telephone:    212.583.9600
Facsimile:    212.832.2719

Anthony G. Ly, Bar No. 228883
aly@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California 90067.3107
Telephone:    310.553.0308
Facsimile:    310.553.5583

Attorneys for Defendant
HOMEAGLOW INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE GOMES, an individual, on behalf of herself, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HOMEAGLOW INC., a Delaware corporation; and DOES 1 through 30, Inclusive,<br><br>Defendant. | Case No. 2:22-cv-00835-KJM-KJN<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>Date:    August 19, 2022<br>Time:    10:00 a.m.<br>Ctrm.:   Courtroom 3, 15th Floor |

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF FACTS ................................................................................. 1

  A.  Homeaglow Operates Across The United States of America. ................... 1

  B.  Homeaglow's Valid Arbitration Agreement. ............................................ 2

  C.  Plaintiff Electronically Acknowledged The Valid Arbitration Agreement. ......................... 3

  D.  Plaintiff Refuses To Arbitrate. ................................................................ 4

III.  LEGAL ARGUMENT ....................................................................................... 5

  A.  The Federal Arbitration Act Governs The Arbitration Agreement. ......... 5

  B.  The Court Should Enforce The Class Action Waiver And Order Individual Arbitration ...... 7

  C.  The PAGA Waiver Must Be Enforced. ..................................................... 8

  D.  The Parties Unmistakably Reserved All Other Issues For Arbitration. .............. 10

  E.  The Arbitration Agreement Is Valid And Must Be Enforced. ................. 11

    1.  The Arbitration Agreement Is A Valid Contract. ............................. 11

    2.  The Arbitration Agreement Covers All Of Plaintiff's Claims. .......... 12

    3.  The Arbitration Agreement Is Not Unconscionable. ......................... 13

IV.  CONCLUSION ................................................................................................ 15

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Foundation Health Psychcare Servs., Inc.,*
24 Cal. 4th 83 (2000) .................................................................................14

*AT & T Techs., Inc. v. Commc'ns Workers of Am.,*
475 U.S. 643 (1986).............................................................................10, 13

*AT&T Mobility, LLC v. Concepcion,*
563 U.S. 333 (2011)............................................................................5, 6, 7

*Baltazar v. Forever 21 Inc.,*
62 Cal.4th 1237 (2016) .............................................................................13

*Brennan v. Opus Bank,*
796 F.3d 1125 (9th Cir. 2015) ..................................................................10

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440 (2006).................................................................................5, 6

*Caley v. Gulfstream Aerospace Corp.,*
428 F.3d 1359 (11th Cir. 2005) ...................................................................7

*Cape Flattery Ltd. v. Titan Mar., LLC,*
647 F.3d 914 (9th Cir. 2011) ......................................................................6

*Cheng v. PayPal, Inc.*
2022 WL 126305 (N.D. Cal. 2022) ..........................................................10

*Citizens Bank v. Alafabco, Inc.,*
539 U.S. 52 (2003)........................................................................................6

*Contec Corp. v. Remote Solution Co.,*
398 F.3d 205 (2nd Dist. 2004) ..................................................................10

*Dantz v. Am. Apple Group, LLC*
123 Fed. Appx. 702 (6th Cir. 2005) ..........................................................12

*Davis v. Nordstrom, Inc.,*
755 F.3d 1089 (9th Cir. 2014) ..................................................................12

*DeMartini v. Johns*
2012 WL 4808448 (N.D. Cal. 2012) .........................................................12

*Direct TV, Inc. v. Imburgia,*
577 U.S. 47 (2015).......................................................................................6

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

i

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

*Dwyer v. Dynetech Corp.*
   No. C07-02309 JSW, 2007 WL 2726699 (N.D. Cal. Sept. 17, 2007) ................................... 14

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .......................................................................................................... 10, 11

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .................................................................................................................... 5

*Greenspan v. LADT, LLC*,
   185 Cal. App. 4th 1413 (2010) ............................................................................................... 10

*Halim v. Great Gatsby's Auction Gallery, Inc.*
   516 F.3d 557 (7th Cir. 2008) .................................................................................................. 12

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
   552 U.S. 576 (2008) .................................................................................................................. 5

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) .................................................................................................................. 10

*Iskanian v. CLS Transportation Los Angeles, LLC*,
   59 Cal. App. 4th 348 (2014) ..................................................................................................... 8

*Johnmohammadi v. Bloomingdale's, Inc.*,
   755 F.3d 1072 (9th Cir. 2014) .................................................................................................. 8

*Kilgore v. KeyBank, Nat'l Ass'n*
   718 F.3d 1052 (9th Cir. 2013) ................................................................................................ 13

*King v. Larsen Realty, Inc.*
   121 Cal. App.3d 349 (1991) ................................................................................................... 11

*Kinney v. United HealthCare Servs., Inc.*,
   70 Cal.App.4th 1322 (1999) ................................................................................................... 14

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) .............................................................................................................. 8

*Martinez-Gonzalez v. Elkhorn Packing Co. LLC*,
   25 F.4th 613 (9th Cir. 2022) ................................................................................................... 11

*Metters v. Ralphs Grocery Co.*,
   161 Cal.App.4th 696 (2008) ................................................................................................... 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...................................................................................................................... 6

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

ii

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

*Newton v. American Debt Services, Inc.*,
   854 F.Supp.2d 712 (2012) ..................................................................................11

*Perry v. Thomas*,
   482 U.S. 483 (1987) ............................................................................................6

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*,
   55 Cal.4th 223 (2012) ...................................................................................12, 13

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ............................................................................9

*Rodriguez v. American Technologies, Inc.*,
   136 Cal.App.4th 1110 (2006) ..............................................................................6

*Ruiz v. Moss Bros. Auto Group, Inc.*,
   232 Cal.App.4th 836 (2014) ..............................................................................11

*Sanchez v. Valencia Holding Co., LLC*
   61 Cal.4th 899 (2015) .......................................................................................13

*Sheppard v. Staffmark Investment LLC*,
   2021 WL 690260 (N.D. Cal. 2021) ...................................................................11

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal.4th 1109 (2013) .....................................................................................14

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ......................................................................................8, 12

*Victrola 89, LLC v. Jaman Properties 8 LLC*
   46 Cal.App.5th 337 (2020) .................................................................................6

*Viking River Cruises, Inc. v. Moriana*,
   No. 20-1573, 2022 WL 2135491 (U.S. June 15, 2022) ...............................4, 8, 9

*Wallace v. Grubhub Holdings, Inc.*,
   970 F.3d 798 (9th Cir. 2000) ..............................................................................6

*Wolschlager v. Fid. Nat. Title Ins. Co.*,
   111 Cal. App. 4th 784 (2003) ...........................................................................11

**Statutes**

9 U.S.C. § 2 .............................................................................................................5, 6

9 U.S.C. § 3 ...............................................................................................................15

Cal. Civ. Code § 1550 ...............................................................................................11

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

Cal. Civ. Code § 1556 .................................................................................................12

Cal. Civ. Code § 1633.9(a) and (b) ..............................................................................11

Federal Arbitration Act ..............................................................................1, 5, 6, 7, 8

Labor Code Private Attorneys General Act of 2004 ...................................................1, 9

PAGA ....................................................................................................................... *passim*

**Other Authorities**

JAMS Comprehensive Arbitration Rules & Procedures Rule 11 ................................10

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

iv

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.     INTRODUCTION

When Plaintiff Jeanette Gomes ("Plaintiff") contracted with Defendant Homeaglow Inc. ("Homeaglow") to use the Homeaglow platform to connect with individuals looking for cleaning services, she expressly agreed to resolve any disputes by way of arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA").  In order to utilize the platform, Plaintiff entered into a Contractor Agreement that contained a binding and enforceable arbitration provision, covering any claims arising out of her relationship with Homeaglow and requiring the parties to arbitrate on an individual basis only.  Despite this clear and unambiguous agreement, Plaintiff disregarded her obligation to arbitrate her disputes, filed the instant class and representative action, and thereafter, rejected Homeaglow's requests to submit her individual claims to arbitration.   Accordingly, Homeaglow moves the Court to enforce the parties' arbitration agreement and to issue an order compelling Plaintiff to submit her claims to individual arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") and U.S. Supreme Court precedent, which require enforcement of the parties' express waiver of class claims and an individual claim under the Labor Code Private Attorneys General Act of 2004 ("PAGA").  This express waiver must be enforced and thus, the Court should dismiss Plaintiff's class claims and individual PAGA claim.

## II.    STATEMENT OF FACTS

### A.     Homeaglow Operates Across The United States of America.

Homeaglow is a digital application-based company headquartered in Austin, Texas[1] that facilitates "on-demand" home cleaning services requested by third parties through the internet and/or mobile data network on a laptop and/or mobile device.  Those providing cleaning services who are looking for cleaning services requested by third parties can sign up as independent contractor cleaners ("Cleaners") to use Homeaglow's platform (the "Platform" or "Homeaglow Platform").  With proprietary algorithms created by Homeaglow, the Platform connects individuals seeking home cleaning services with those seeking to provide home cleaning services.  The Platform is available to

---

[1] Homeaglow is incorporated and organized under the laws of the State of Delaware.  Chen Decl., ¶ 5.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

1

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

third parties to request cleaning services in 48 states nationwide.  Cleaners access the Platform using the internet or mobile data network on a laptop and/or mobile device to locate service requests, review the type of service requested, and offer their cleaning services.  Declaration of Xiao Wei Chen ("Chen Decl."), ¶ 4.

### B.    Homeaglow's Valid Arbitration Agreement.

To access the Homeaglow Platform, a Cleaner must first create an account at homeaglow.com/apply.  Chen Decl. at ¶ 6.  The process initially requires a Cleaner to provide their address and phone number and to create a unique password to set up an account.  *Id.* at ¶ 8.

An account is thereafter created, allowing Cleaners to set up a profile.  Next, Cleaners set their own rates to charge third parties for cleaning services.  After setting their own rates, Cleaners must review and accept the Contractor Agreement.  They are provided the Contactor Agreement on a screen that states prominently at the top: "Review & accept your contractor agreement."  Chen Decl. at ¶ 10, **Exhibit A**.  Cleaners review the Contractor Agreement by scrolling through the document.  *Id.* at 11.  Cleaners are free to spend as much time as they wish reviewing the Contractor Agreement.  To agree, a Cleaner must click on a check box stating, "I agree to the above Independent Contractor Agreement" and then separately click the "Submit" button on the bottom of the screen.  *Id*.

The Contractor Agreement contained a "Binding Arbitration" provision ("Arbitration Agreement") requiring Cleaners to individually arbitrate all disputes related to the Contractor Agreement, their relationship with Homeaglow, and services provided under the Contractor Agreement.  This is clear beginning with the first paragraph of the Arbitration Agreement:

> **Binding Arbitration.** The parties recognize that disputes may arise between the Contractor and Homeaglow or their related parties, and that those differences may or may not be related to the Contractor's services under this Agreement. In order to gain the benefits of a speedy, less-formal, impartial, final and binding procedure to resolve such disputes, all such disputes will be resolved by means of binding arbitration as set forth below.

*Id.* at ¶ 11, Ex. B, page 5.  The Arbitration Agreement expressly covered, "all claims or controversies ('Claims'), past, present or future, whether or not arising out of the Contractor's services under this Agreement, that Homeaglow may have against the Contractor, or that the Contractor may have against . . . Homeaglow," which "include but are not limited to contract claims, tort claims, and claims for

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

2

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

violation of any federal, state, or other governmental law, statute (including anti-discrimination statutes), regulation, or ordinance, except for any claims that are not arbitrable as a matter of law." (*Id.*)

The Binding Arbitration provision also contained waiver of class and PAGA actions.

> **Single-Claimant Arbitration Only.** To the maximum extent permitted by law, the Contractor and Homeaglow hereby waive any right to bring on behalf of other persons or entities, or to otherwise participate with other persons or entities in, any class, collective, or representative action (including but not limited to any representative action under the California Private Attorneys General Act ("PAGA"), or other federal, state or local statute or ordinance of similar effect). The Contractor understands, however, that to the maximum extent permitted by law, the Contractor retains the right to bring claims in arbitration, including PAGA claims, for itself/himself/herself as an individual (and only for itself, himself or herself). If a court adjudicating a case involving Homeaglow and the Contractor were to determine that there is an unwaivable right to bring a PAGA representative action, any such representative action shall be brought only in court, and not in arbitration.

*Id.* at ¶ 11, Ex. B, page 5.

Only after Cleaners affirmatively click the "I agree to the above Independent Contractor Agreement" box and separately click the "Submit" button, can they advance past the screen containing the Contractor Agreement. Cleaners who do not accept the Contractor Agreement cannot complete the process of creating a profile and they cannot utilize the Platform. Chen Decl. at ¶ 12.

### C.    Plaintiff Electronically Acknowledged The Valid Arbitration Agreement.

Plaintiff created an account to use the Platform on October 15, 2021 at 12:16 a.m. CDT. Chen Decl. at ¶13. Plaintiff set up her account with a unique password and completed her profile on October 15, 2021. As explained above, in order to complete her profile, Plaintiff had to accept the Contractor Agreement by affirmatively clicking and checking the box that stated, "I agree to the above Independent Contractor Agreement" and thereafter, separately clicking the "Submit" button on the bottom of the screen. Chen Decl. at ¶¶ 13-14. Plaintiff did this and accepted the Contractor Agreement on October 15, 2021 at 12:25AM CDT. *Id.* at ¶13; Ex. C (Homeaglow electronic database). Thereafter, Plaintiff utilized the Platform to accept a cleaning request on October 15, 2021 at 12:40:05AM CDT [Gomes - 10.15.21 Data Log.xlsx row 20 where column D states "/cp/job/1517715/a"] and 31 seconds later to accept second cleaning request for a different customer on October 15, 2021 at 12:40:36AM [Gomes - 10.15.21 Data Log.xlsx row 22 where column D states

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

3

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

1   "/cp/job/1515488"]

2   **D.    Plaintiff Refuses To Arbitrate.**

3   On April 12, 2022, Plaintiff filed a class and representative action in state court.  On May 17,

4   2022, Homeaglow removed the action to this Court.[2]  Prior to filing this Motion, counsel for the parties

5   met and conferred to thoroughly discuss the substance of the contemplated motion and any potential

6   resolution.  Declaration of Anthony G. Ly ("Ly Decl."), ¶¶ 5-9.  On June 6, 2022, Homeaglow sent a

7   meet and confer letter to Plaintiff, providing a copy of the Arbitration Agreement, and requesting that

8   Plaintiff stipulate to submitting her claims against Homeaglow to final and binding arbitration on an

9   individual basis only in accordance with the Arbitration Agreement.  The parties thereafter met and

10   conferred by telephone on June 7, 2022.  On the call, Plaintiff's counsel requested information showing

11   that Plaintiff electronically accepted the Arbitration Agreement.  Ly Decl. at ¶¶ 6-7, Ex. A.

12   On June 8, 2022, defense counsel provided Plaintiff's counsel with detailed data showing that

13   Plaintiff set up her account and profile on October 15, 2021, and thereafter utilizing the Platform after

14   she completed her account and profile.  The data also showed that Plaintiff accepted the Contractor

15   Agreement on October 15, 2021 at 12:25AM CDT, which was explained by defense counsel.  Ly Decl.

16   at ¶ 7, Ex. B; Chen Decl. at ¶ 13.  Thereafter, the parties agreed that the outcome of *Viking River*

17   *Cruises, Inc. v. Moriana*, 2022 WL 2135491 (Case No. 20–1573) would directly affect Homeaglow's

18   anticipated motion to compel arbitration and the enforceability of the parties' agreement to waive a

19   PAGA claim and thus, they stipulated to stay the case pending the *Viking River* decision.  Ly Decl. at

20   ¶ 7, Ex. C.  The Court did not issue an order on the parties' stipulation and the case was not stayed.

21   *Id.*

22   After the Supreme Court issued a decision in *Viking* on June 15, counsel for the parties met

23   and conferred further by telephone on June 22, 2022 and by email on June 24, 2022, regarding the

24   substance of this Motion.  Ly Decl. at ¶ 8. On June 27, 2022, the parties met and conferred again by

25   telephone.  In their meet and confer discussions, the parties addressed specific issues raised by Plaintiff

26

27   [2] Prior to removing this action, Homeaglow filed an Answer to the Complaint, expressly identifying
    Plaintiff's agreement to arbitrate and obligation to arbitrate on an individual basis as the first two

28   affirmative defenses asserted in response to Plaintiff's Complaint.  Request for Judicial Notice
    ("RJN"), Ex. 2, (state court Answer filed by Defendant in this action), pg. 2-3).

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

in support of her refusal to arbitrate, which were: (1) Homeaglow's alleged waiver of the right to arbitrate by removing the case to federal court; (2) a dispute as to formation of a contract because Plaintiff does not recall seeing the Contractor Agreement, which based on the data, shows that it was accepted in a short amount of time; (3) that a PAGA claim is not covered by the Arbitration Agreement; and (4) the Arbitration Agreement is allegedly unconscionable.  Ly Decl. at ¶ 9.  On June 27, Plaintiff's counsel stated that Plaintiff would likely no longer oppose Homeaglow's Motion on the grounds stated in numbers 2 and 3 above, but that he needed to confirm and would attempt to respond by June 29.  Ly Decl. at ¶ 9, Ex. E.  Plaintiff's counsel did not get back to defense counsel and defense counsel followed up on June 30 by email to request a response.  Ly Decl. at ¶ 9, Ex. F.  On July 5, 2022, Plaintiff's counsel confirmed by email, stating that Plaintiff would not agree to stipulate to arbitration because the Arbitration Agreement is allegedly unconscionable and Homeaglow allegedly waived its right to arbitrate.[3]  Ly Decl. at ¶¶ 9-10, Ex. G.

## III.   LEGAL ARGUMENT

### A.   The Federal Arbitration Act Governs The Arbitration Agreement.

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 353-54 (2011), the FAA declares a liberal policy favoring the enforcement of arbitration agreements, stating: "A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction …shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In enacting the FAA, Congress sought to overcome what was then widespread judicial hostility to the enforcement of arbitration agreements.  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").

The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500

---

[3] Plaintiff also stated that she disagreed with the holding in *Viking River* regarding the required dismissal of a representative PAGA claim premised on Labor Code violations experienced by other alleged employee once the plaintiff's individual PAGA claim is compelled to arbitration.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION

U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  To these ends, the FAA not only places arbitration agreements on equal footing with other contracts, but it amounts to a "congressional declaration of a liberal federal policy **favoring** arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis added) (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24); *see also Direct TV, Inc. v. Imburgia*, 577 U.S. 47, 53 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act"); *Concepcion*, 563 U.S. at 344 ("The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings").  Thus, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011) (citation and internal marks omitted).

The Arbitration Agreement at issue here is indisputably governed by the FAA.  First, it specifically states as much: "The Federal Arbitration Act will govern the interpretation and enforcement of the parties' agreement to arbitrate."  Chen Decl. at ¶ 11, Ex. B, page 5.  This is sufficient to bring it within the purview of the FAA.  *Buckeye Check Cashing, Inc.*, 546 U.S. at 442-43 (finding that where arbitration agreement provided that FAA was to govern, FAA preempted application of state law); *Victrola 89, LLC v. Jaman Properties 8 LLC*, 46 Cal.App.5th 337, 355 (2020) (the parties' voluntary election of the FAA "prevents [plaintiff] from using [Code of Civil Procedure] Section 1298.7 as an escape hatch from the parties' agreement to arbitrate"); *Rodriguez v. American Technologies, Inc.*, 136 Cal.App.4th 1110, 1122 (2006) (holding that the trial court lacked discretion under state arbitration law to deny a motion to compel arbitration because the parties expressly agreed to apply the FAA.

Second, the agreement within which the Arbitration Provision is contained "involves" commerce under section 2 of the FAA, which courts have interpreted broadly as required because section 2 "expands the FAA's reach to the full extent of Congress's commerce power. 9 U.S.C. §2; *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 803 (9th Cir. 2000); *see, e.g., Citizens Bank v.*

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

6

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

*Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005) (citation omitted) (explaining that the words signal the "broadest possible" exercise of federal commerce power). Here, it is indisputable that the Contractor Agreement "evidence[es] a transaction involving commerce" because the Parties are citizens of different states who contracted for Plaintiff's use of the Platform through the internet and/or mobile data network, which facilitates services between cleaners and customers in 48 states nationwide. Chen Decl. at ¶ 4; *see* RJN, Ex. 1, ¶ 1 (Complaint). Plaintiff's acceptance of the Contractor Agreement to use the Homeaglow Platform, as well as the aggregate impact of the Contractor Agreement and the Homeaglow Platform across the United States, clearly involved commerce broadly interpreted under the FAA.

Accordingly, the Arbitration Agreement is governed by the FAA and it must be enforced under the FAA for the reasons stated below.

**B.    The Court Should Enforce The Class Action Waiver And Order Individual Arbitration.**

The Supreme Court has repeatedly confirmed that class action waivers are enforceable under the FAA because requiring class arbitration "interferes with fundamental attributes of arbitration and thus [it] creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344. Here, the Arbitration Agreement contains the parties' express consent to arbitrate on an individual basis only, not on a class-wide basis: "the Contractor and Homeaglow hereby waive any right to bring on behalf of other persons or entities, or to otherwise participate with other persons or entities in, any class, … action. The Contractor understands, however, that to the maximum extent permitted by law, the Contractor retains the right to bring claims in arbitration…for itself/himself/herself as an individual (and only for itself, himself or herself)." Chen Decl. at ¶11, Ex. B. page 5. This class action waiver must be enforced as written under the FAA under U.S. Supreme Court precedent. *Concepcion*, 563 U.S. at 344 ("[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.") The failure to enforce the class action waiver by allowing "classwide arbitration [would] interfere[] with [the]

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

7

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.*

In fact, the Supreme Court has mandated that courts must order arbitration on an individual basis rather than class basis even if the arbitration agreement is ambiguous or silent on the issue of whether class arbitration is available. *See Stolt-Nielsen*, 559 U.S. at 684, 687; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019). This is because arbitration is a matter of consent and the FAA mandates that arbitration agreements are "'enforced . . . according to their terms.'" *Lamps Plus*, 139 S. Ct. at 1415 (citation omitted). Accordingly, the U.S. Supreme Court recently confirmed again that "'the shift from bilateral arbitration to class-action arbitration' are too fundamental to be imposed on parties without their consent." *Viking River Cruises, Inc. v. Moriana*, No. 20-1573, 2022 WL 2135491, at *9 (U.S. June 15, 2022). Here, the Parties expressly consented to arbitrate on an individual basis only. Their consent to bilateral arbitration on an individual must be enforced as written under the FAA, and because Plaintiff cannot pursue her class claims, they must be dismissed. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-1074 (9th Cir. 2014) (action may be "dismissed . . . outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration.")

### C.     The PAGA Waiver Must Be Enforced.

On June 15, 2022, the U.S. Supreme Court invalidated California's rule prohibiting the enforcement of arbitration agreements that like the Arbitration Agreement here, requires arbitration of a plaintiff's individual PAGA claim. Specifically, the Court in *Viking River* held that contrary to the California Supreme Court's holding in *Iskanian v. CLS Transportation Los Angeles, LLC*, 59 Cal. App. 4th 348 (2014), the FAA applies to a PAGA claim. *Viking River*, 2022 WL 2135491, at *11. Moreover, the application of the FAA mandates that agreements requiring the plaintiff to arbitrate a PAGA claim involving only his or her alleged Labor Code violations must be enforced where the parties' arbitration agreement provides for arbitration of such claims. *Id.*

Here, the parties' Arbitration Agreement expressly contains an agreement to arbitrate an individual PAGA claim, which must be enforced under *Viking River*. Specifically, it expressly requires arbitration of Plaintiff's PAGA claims "for . . . herself as an individual (and only for . . . herself)." Chen Decl. at ¶11, Ex. B. page 5. This agreement must be enforced as written, and Plaintiff must be

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

8

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

ordered to arbitrate her individual PAGA claim. *Viking River*, 2022 WL 2135491 at *31 ("Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim.")

Even where PAGA waivers do not expressly provide for arbitration of individual claims (though this Arbitration Agreement does), a wholesale waiver of a PAGA claim – *i.e.*, a prohibition to pursue a PAGA claim *entirely* – requires the arbitration of an individual PAGA claim where there is a severability provision requiring the waiver to be enforced to the extent any portion of it remains valid. *Viking River* explained unequivocally in enforcing a PAGA waiver to the extent it allowed for arbitration of an individual PAGA claim: "Based on [the severability] clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim." *Viking River*, 2022 WL 2135491 at *31; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272 (9th Cir. 2017) ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.")  Here, the parties' waiver of a PAGA claim also contains a severability provision that requires arbitration of Plaintiff's individual PAGA claim.  The PAGA waiver states, "***To the maximum extent permitted by law***, the Contractor and Homeaglow hereby waive any right to bring on behalf of other persons or entities, or to otherwise participate with other persons or entities in, any class, collective, or representative action (including but not limited to any representative action under the California Private Attorneys General Act ("PAGA")."  Chen Decl. at ¶ 11, Ex. B, page 6 (emphasis added.)

Finally, Plaintiff's representative PAGA claim based on alleged violations experienced by other individuals must be dismissed. *Viking River* explained that this is the correct course of action because the PAGA statute "provides no mechanism to enable a court to adjudicate non-individual claims once an individual claim has been committed to a separate proceeding." *Viking River*, 2022 WL 2135491, at *11. This is the case here, where Plaintiff has agreed to arbitrate her individual PAGA claim.

Accordingly, Homeaglow respectfully requests that the Court issue an order compelling Plaintiff to arbitrate her individual PAGA claim and to dismiss her representative PAGA claim premised on alleged Labor Code violations experienced by other individuals.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

9

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

**D.    The Parties Unmistakably Reserved All Other Issues For Arbitration.**

Normally, in deciding whether to compel arbitration, a court is charged with determining two "gateway" issues: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that arbitration agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Cheng v. PayPal, Inc.* 2022 WL 126305, at *2 (N.D. Cal. 2022). However, there is an exception to this general rule where, as here, "the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  In such a case, the court examines the underlying contract to determine whether the parties agreed to commit questions of enforceability or arbitrability to the arbitrator.  *Rent-A-Center*, 561 U.S. at 70.  Here, the parties clearly and unmistakably agreed that the Arbitrator is to decide these issues by expressly incorporating the Judicial Arbitration & Mediation Services ("JAMS") rules: "The arbitration shall be held in accordance with its then-current Comprehensive Arbitration Rules & Procedures . . ."  Chen Decl. at ¶11, Ex. B, p. 6.

Express incorporation of the JAMS rules is clear and unmistakable evidence that the parties agreed to delegate issues of arbitrability to an arbitrate in accordance with JAMS Rule 11(b), which states, "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter" and requires arbitration of disputes regarding "formation, existence, validity, interpretation or scope of the agreement."  RJN, Ex. 3, Rule 11; *see Brennan v. Opus Bank*, 796 F.3d 1125, 1130-1131 (9th Cir. 2015) ("incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *see also Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2nd Dist. 2004) ("when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413 (2010) (arbitrator correctly decided arbitrability issue under JAMS Rule 11 because it was expressly incorporated in the agreement.)   Delegation clauses incorporated by reference must be enforced because it is a basic contract principle that, a "contract may validly include the provisions of a document not physically a part of the basic contract" so long as the reference is "clear and unequivocal," "called to the attention of the other party and he must

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

consent thereto," and the terms are "known or easily available to the contracting parties." *Wolschlager v. Fid. Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003); *see King v. Larsen Realty, Inc.* 121 Cal. App.3d 349, 357 (1991) ("[A] secondary document becomes part of a contract as recited verbatim when it is incorporated into a contract by reference, provided that the terms of the incorporated document are readily available to the other party.").  All of these requirements are met here.

### E.   The Arbitration Agreement Is Valid And Must Be Enforced.

Even if the Court determines the gateway issues, a valid agreement to arbitrate exists.

#### 1.   The Arbitration Agreement Is A Valid Contract.

When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, (1995).  Under California law, a valid contract exists when: (1) the parties are capable of contracting; (2) there was mutual consent; (3) the contract had a lawful object; and (4) the contract was supported by consideration.  Cal. Civ. Code § 1550.  Here, the Arbitration Agreement easily meets these requirements.

Plaintiff has not disputed that she accepted the Contractor Agreement containing the Arbitration Provision.[4]  She cannot because Homeaglow's data unequivocally establishes when (*i.e.*, October 15, 2021) and how (*i.e.*, accepting the Contractor Agreement with her email and unique password among other steps she took to complete her account and profile to access the Platform) it was accepted.  Chen Decl. at ¶¶ 13-15.  Electronically accepted agreements are enforceable.  *See Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th 836, 842-43 (2014); *Newton v. American Debt Services, Inc.*, 854 F.Supp.2d 712, 731-32 (2012); *Sheppard v. Staffmark Investment LLC*, 2021 WL 690260, at *3 (N.D. Cal. 2021); Cal. Civ. Code § 1633.9(a) and (b).  During the meet and confer process, Plaintiff claimed that she does not recall seeing the Arbitration Agreement, but that is not a defense to enforcement.  However, it is well-established that a party's failure to read a contract before signing it is no defense to the contract's enforcement.  *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, 25 F.4th 613 (9th Cir. 2022).  Indeed, "[a]n arbitration clause . . . may be binding on a party even

---

[4] Indeed, Plaintiff alleges the existence of a contract between her and Homeaglow.  Complaint at ¶ 117.

11

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

1   if the party never actually read the clause." *Pinnacle Museum Tower Assn. v. Pinnacle Market*

2   *Development (US), LLC*, 55 Cal.4th 223, 236 (2012).  Thus, an arbitration agreement exists and it is

3   valid for all the reasons below.[5]

4       First, all parties were capable of contracting. Cal. Civ. Code § 1556 ("All persons are capable

5   of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").

6   Second, there was mutual consent.  A party's acceptance of an arbitration agreement (as with any

7   contract) may be express or implied in fact.  *Metters v. Ralphs Grocery Co.*, 161 Cal.App.4th 696, 701

8   (2008).  Plaintiff clearly and expressly agreed to arbitration when she had to click the check box that

9   stated, "I agree to the above Independent Contractor Agreement" and click the "Submit" button on the

10  bottom of the screen when she initially created an account as a cleaner.

11      Third, the Arbitration Agreement had lawful objectives, *i.e.*, the resolution of disputes through

12  binding arbitration.  *See Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014).  Fourth, the

13  Arbitration Agreement was supported by sufficient consideration.  The mutuality of the promises and

14  advantages of arbitration, rather than litigating in court, constitute ample consideration.  *Stolt-Nielsen*

15  *v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).  Here, the Arbitration Agreement is mutually

16  binding and provides benefits to and obligations on both parties. Chen Decl. at ¶11, Ex. B.

17      **2.**    **The Arbitration Agreement Covers All Of Plaintiff's Claims.**

18      The Arbitration Agreement likewise meets second gateway question in that it covers each of

19

20  [5] Plaintiff has stated that Homeaglow waived the right to enforce the Arbitration Agreement by

21  removing this case to federal court.  This argument should be dismissed out of hand because

    Homeaglow has not taken any action that is inconsistent with its position that the Arbitration

22  Agreement must be enforced.  Homeaglow's asserted in its Answer, its first appearance on , that the

    first two affirmative defenses is that Plaintiff's exclusive remedy was arbitration and that all of her

23  claims must be arbitrated on an individual basis.  Twenty days later, Homeaglow sent a letter

    demanding that Plaintiff submit her claims to arbitration on an individual basis.  Ly Decl. at ¶ 6.  The

24  parties have since met and conferred regarding the issues in dispute in accordance with this Court's

    Civil Standing Order in an attempt to reach a potential resolution.  *Id.* at ¶¶ 6-9.  Homeaglow thereafter

25  filed this Motion after several good faith attempts to confer by email and telephone.  *Id.*.  Homeaglow's

    actions have been consistent with its expressed intent to enforce the Arbitration Agreement.  The act

26  of removing the case alone is not inconsistent with the right to compel arbitration.  *See e.g.*, *Halim v.*

    *Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (holding that removal did not

27  constitute a waiver); *Dantz v. Am. Apple Group, LLC*, 123 Fed. Appx. 702, 707 (6th Cir 2005) ("mere

    removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right

28  to arbitration."); *DeMartini v. Johns*, 2012 WL 4808448, at *5 (N.D. Cal. 2012) (removal alone is not

    sufficiently inconsistent with the right to seek arbitration ***and*** does not give rise to prejudice.")

    (Emphasis added.)

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

12

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

Plaintiff's asserted claims. Because there is a presumption of arbitrability, a motion to compel arbitration must be granted when it cannot "be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650 (quotation marks omitted).  "Doubts should be resolved in favor of coverage." *Id.* (quotation marks omitted).  This case does not present a close call. The Agreement expressly applies to all disputes "whether or not arising out of the Contractor's services under this Agreement, that Homeaglow may have against the Contractor, or that the Contractor may have against… Homeaglow." Chen Decl. at ¶11, Ex. B., page 5.  Furthermore, the Arbitration Agreement notes that arbitrable claims include but are not limited to contract claims, tort claims, and claims for violation of any federal, state, or other governmental law, statute (including anti-discrimination statutes), regulation, or ordinance, except for any claims that are not arbitrable as a matter of law.  *Id.*  Plaintiff's claims of unfair competition, statutory Labor Code violations, and violation of the PAGA based on her alleged misclassification as an independent contractor expressly fall under the Arbitration Agreement, which requires arbitration of claims regarding Plaintiff's relationship with Homeaglow and the services Plaintiff provided under the Contractor Agreement.

### 3. The Arbitration Agreement Is Not Unconscionable.

An arbitration agreement, like any contract, is unenforceable if it is *both* substantively and procedurally unconscionable.  *Baltazar v. Forever 21 Inc.*, 62 Cal.4th 1237, 1244 (2016).  The Arbitration Agreement is not procedurally or substantively unconscionable.

Procedural unconscionability focuses on "oppression" or "surprise." *Pinnacle Museum Tower Assn. v. Pinnacle Market Dev.*, 55 Cal.4th 223, 246 (2012).  The Arbitration Agreement is not procedurally unconscionable because Plaintiff had an adequate opportunity to review the provision contained in the Agreement, and each provision is conspicuous.  There is nothing "oppressive" or "surprising" about the Arbitration Agreement here.  Rather, even though there is no requirement to call attention to an arbitration provision, the Agreement clearly identified the Binding Arbitration provision "in its own section, clearly labeled, in boldface." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013); *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 914 (2015).  Moreover, there was no timing requirement regarding execution of the Contractor Agreement.  Also,

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

Plaintiff was provided as much or as little time as she determined necessary to read and understand the agreements. *See Dwyer v. Dynetech Corp.*, No. C07-02309 JSW, 2007 WL 2726699, at *4 (N.D. Cal. Sept. 17, 2007) (the fact that the plaintiff had four days to review the arbitration agreement "weigh[ed] against a finding of procedural unconscionability").   Accordingly, the Arbitration Agreement is not procedurally unconscionable.

Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney v. United HealthCare Servs., Inc.*, 70 Cal.App.4th 1322, 1330 (1999); *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1160 (2013) ("unconscionability requires a substantial degree of unfairness").   An arbitration provision is substantively unconscionable if it is "overly harsh" or creates "one-sided results." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  The California Supreme Court in *Armendariz* explained what makes an employment arbitration agreement substantively unconscionable but those requirements do not apply because Plaintiff was an independent contractor. *Id.*, 24 Cal. 4th at 102.  However, even though Plaintiff is not an employee, ***if*** *Armendariz* applies here, the Arbitration Agreement complies with the *Armendariz* factors: (1) a neutral arbitrator; (2) adequate discovery; (2) a written award; (4) the availability of all relief that would otherwise be available in Court; and (5) payment by the employer of any fee beyond what the employee must pay in Court. *Id.* at 102-14.

The Arbitration Agreement and incorporated JAMS Rules satisfy all the *Armendariz* requirements because they: (1) provide for a neutral arbitrator (Chen Decl. at ¶11, Ex. B. page 5); (2) provide adequate discovery under the JAMS Rules (*Id.* at ¶15, Ex. B. page 6.; *Armendariz*, 24 Cal. 4th at 106 (adequate discovery is inferred "absent express language to the contrary"); (3) provide a written award (*Id.* at ¶15, Ex. B. page 6); (4) do not limit statutorily available remedies (*Id.* at ¶15, Ex. B. page 6. ("The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted."); and (5) require payment of arbitration fees by Homeaglow (*Id.* at ¶15, Ex. B. page 6).  Accordingly, even if the Court will address unconscionability, the Arbitration Agreement meets all of the *Armendariz* factors and is not substantively unconscionable.

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

14

DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION

**IV.    CONCLUSION**

For the reasons set forth above, Homeaglow respectfully requests this Court (1) enforce the Arbitration Agreement voluntarily entered into by Plaintiff and order her to arbitrate all of her individual claims, including her individual PAGA claim; and (2) dismiss Plaintiff's class claims and representative PAGA claim.   Alternatively, the Court should dismiss Plaintiff's class claims and representative PAGA claim and stay the case pending a final disposition of the arbitration on Plaintiff's individual claims.  9 U.S.C. § 3.

Dated: July 5, 2022

LITTLER MENDELSON, P.C.


_____
Anthony G. Ly
Andrew M. Spurchise

Attorneys for Defendant
HOMEAGLOW INC.

4867-4468-5598.10 / 114736-1002

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

15                     DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO COMPEL ARBITRATION